# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA MACON DIVISION

| | |
|---|---|
| **LATISHA NIXON-JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. _____ |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| **THE CORPORATION OF** | ) |
| **MERCER UNIVERSITY,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff **Latisha Nixon-Jones** ("Plaintiff" or "Nixon-Jones") brings this employment action for relief and damages against Defendant **The Corporation of Mercer University** ("Defendant" or "Mercer") based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1. This action to correct unlawful employment discrimination by a private law school arises under 42 U.S.C.A. § 12203(a), the Americans with Disabilities Act ("ADA"); 29 U.S.C.A. § 2615(a)(2), the Family Medical Leave Act, ("FMLA"); and 42 U.S.C.A. § 1981, which precludes race discrimination in contractual relationships including employment.

1

2.  Latisha Nixon-Jones, an African-American, was employed by the Mercer University School of Law ("Mercer Law") as a tenure track Assistant Professor of Law from August 2021 to June 2023.

3.  During her employment, Nixon-Jones alleges that Mercer subjected her to discriminatory and retaliatory conduct in violation of multiple federal employment statutes.

4.  After she experienced protracted medical complications in the form of long Covid and sought an ADA accommodation that would permit her to teach remotely for the entirety of the 2021-22 academic year, Nixon-Jones' professional standing at Mercer deteriorated. Her course load and the substance of her courses were diminished, which compromised her ability to satisfy certain metrics that are a prerequisite for tenure.

5.  After Nixon-Jones' health required her to periodically exercise her right to take intermittent FMLA leave, senior-level leadership at Mercer Law warned her that she was acquiring the "reputation" of being an employee who missed too many work days for medical reasons and that her contract renewal and eventual tenure prospects were in jeopardy.

6.  In addition, Nixon-Jones experienced disparate treatment based on race, including compensation at a lower salary than at least one white peer who

was hired at the same time as Nixon-Jones but with less teaching and academic experience.

7. To remedy Mercer's unlawful conduct, which led her to resign her professorship to avoid the career-threatening nonrenewal of her contract, Nixon-Jones seeks damages for economic loss based on the harm she has incurred to her future earnings potential; compensatory damages for mental anguish and emotional distress to the extent allowed by law; punitive damages; liquidated damages for the violation of her FMLA rights; and her attorneys' fees and the costs of litigation.

## THE PARTIES

8. During the time of the events alleged in this complaint, Nixon-Jones was employed by Mercer Law as a full-time Assistant Professor.

9. At times relevant to this complaint, Nixon-Jones was an individual with physical impairments that substantially limited one or more major life activities. 42 U.S.C.A. § 12102(1)(A). Specifically, she suffered complications from long Covid that impaired her mobility and caused heart and lung complications. At all relevant times, Nixon-Jones was qualified to perform the essential functions of her position with reasonable accommodations.

10. Mercer is an entity subject to suit under Title I of the ADA in that it had more than 15 employees for each working day in each of 20 or more calendar weeks in the current calendar year. 42 U.S.C.A. § 12111(5)(A).

11. Mercer is a covered employer under the FMLA in that it is engaged in an industry affecting commerce and has had more than 50 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 29 C.F.R. § 825.104(a).

## PERSONAL JURISDICTION

12. Mercer may be served with proper process through its registered agent on record with the Georgia Secretary of State, Matthew Hall, at 1501 Mercer University Dr., Macon, GA 31207.

## SUBJECT-MATTER JURISDICTION AND VENUE

13. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

14. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in and the alleged unlawful acts occurred in this judicial district and division.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

15. Plaintiff filed a charge of retaliation under the ADA with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2023-10665, on August 9, 2023. A copy is attached as Exhibit A.

16. Plaintiff subsequently received a Right-to-Sue letter from the EEOC on November 28, 2023. A copy is attached as Exhibit B.

17. Plaintiff timely files her ADA claim within 90 days of receiving her Right-to-Sue letter.

**FACTUAL ALLEGATIONS**

18. Nixon-Jones is an accomplished legal scholar who is nationally renowned for her contributions to the emerging field of disaster law, a discipline that examines the interplay between administrative regulations and insurance law in the context of liability coverage for natural disasters, as well as the related space of administrative remedies related to natural disasters.

19. Nixon-Jones has produced groundbreaking analysis regarding the legal implications of the coronavirus pandemic, and received the Covid-19 Research Innovation Award from the University of Oregon School of Law.

20. Prior to joining the faculty at Mercer Law School in August 2021, Nixon-Jones served as an Assistant Clinical Professor of the Disaster Law Clinic at Southern University and as a Visiting Assistant Professor at the University of Oregon Law School.

21. Soon after joining the faculty, Nixon-Jones contracted Covid-19 for the second time and suffered a range of continuing serious complications, including periodic bouts of difficulty breathing after exertion as well as irregularities in her heart function. Routine tasks like walking to and from classes became a challenge for her.

22. At the recommendation of her treating physician, Nixon-Jones requested accommodation under the ADA to offer her courses remotely. Mercer honored Nixon-Jones' request for the duration of the first semester of 2021.

23. At the onset of the second semester in January 2022, Nixon-Jones was informed that her telework accommodation would not be extended even though her doctor diagnosed her with long Covid, a potentially debilitating condition that features regular flare-ups of serious Covid symptoms, and which the EEOC and various courts have recognized as an ADA-qualifying impairment.

24. Then-interim Dean of the Law School Karen Sneddon justified the denial of Nixon-Jones' accommodation on the grounds that there was internal

pressure from students and trustees to resume full-fledged in-person course offerings at Mercer, even though in the winter of 2022, the Centers for Disease Control and Prevention and the World Health Organization continued to classify Covid-19 as a national and global pandemic and major portions of the American labor force continued to operate remotely in early 2022.

25. Mercer's refusal to accommodate Nixon-Jones' telework request based on persistent Covid complications differs from its approach to two white law professors, both of whom sought and were granted yearlong remote accommodation requests due to medical conditions that put them at risk of contracting Covid-19.

26. Despite Mercer's denial of her accommodation, Nixon-Jones continued to submit documentation to renew her telework status during the second semester of the 2021-22 academic year.

27. In her annual review meeting with Dean Sneddon in February 2022, Nixon-Jones was told that her continued efforts to resume telework were perceived by her department leadership as an unwillingness to perform the expectations of her teaching role and that she was jeopardizing her future at Mercer.

28. In addition, Nixon-Jones was informed by Sneddon that changes would be made to her course load for the upcoming 2022-23 academic year. She

7

would no longer be assigned to teach Torts I, one of the required courses for first years, and she would instead be assigned to teach Remedies, a subject in which she did not have specific expertise.

29.     The revisions in Nixon-Jones' schedule were consequential to her career prospects at Mercer for several reasons. Torts I is a prestige course that provides an opportunity for an academic seeking tenure to demonstrate to evaluators proficiency in teaching ability. In contrast, being assigned to teach a course outside their zone of expertise ensures that a professor would have to devote resources and time to mastering the subject matter and poses an inevitable risk that their level of performance will dip; in addition, the effort spent absorbing a new field depletes time better spent on scholarship and publication.

30.     Nixon-Jones perceived the alterations in her course load, coupled with the outright warnings that pursuing her ADA accommodation was hurting her professionally, as a reprisal for exercising her ADA rights during the 2021-22 semesters.

31.     Nixon-Jones' assignment to teach Remedies was canceled, but rather than permit her to continue with Torts I, she was left with a yearly schedule that consisted of legal writing courses and seminars. It is rare at Mercer for tenure track

professors to be denied the chance to teach a lecture-style course, given their need to demonstrate skill in such a format.

32. Nixon-Jones did not resume her effort for remote accommodations for the 2022-23 academic year, but in the fall of 2022, she continued to experience flare-ups of Covid-19 that made it impossible to function effectively on some days.

33. Nixon-Jones had no choice but to take intermittent FMLA leave on days she could not come to campus to teach classes during October and November 2022.

34. During the fall of 2022, after Nixon-Jones began taking intermittent leave, Sneddon warned her that the ability to teach her course load was an integral part of her job, a comment that implied to Nixon-Jones that her exercise of her FMLA rights might adversely affect her continued employment.

35. During 2022, Nixon-Jones learned that her annual merit increase would be at the lower end of the 1.5%-3% range. When she questioned the size of the raise, she was told that her extended remote period in the fall of 2021 had adversely affected her student evaluations, which are a component of the evaluation process.

36. In January 2023, Nixon-Jones became ill and was unable to conduct her seminar and legal writing course in person and was given permission to temporarily revert to remote teaching.

37. Soon after her switch to remote work, Sneddon told Nixon-Jones that at least one student had lodged a complaint against her based on her periodic absences and rescheduling of course work. Sneddon told Nixon-Jones that that incident was an indicator that she was acquiring a reputation for avoiding in-person teaching.

38. On February 13, 2023, Sneddon and Nixon-Jones held their annual performance review meeting. During the course of their interaction, Sneddon pointedly told Nixon-Jones she should be aware that even if the tenured faculty voted to recommend renewal, Sneddon, as well as the Provost and President of Mercer University, had the unilateral authority to terminate her contract, an observation Nixon-Jones took as a warning that her future at Mercer was dim.

39. In April 2023, Nixon-Jones resigned her position at Mercer, believing that her contract renewal for the 2023-24 academic year and her chances at tenure were in jeopardy. In the realm of academia, the nonrenewal of a contract or the denial of tenure are potentially crippling to a career.

40. Mercer's actions in the aftermath of Nixon-Jones' telework accommodation constituted an ongoing retaliatory hostile environment that included, but is not limited to, a denial of a continuing remote accommodation, unfavorable changes in her teaching schedule to the detriment of her candidacy for tenure, warnings from the Dean that her exercise of her ADA rights was damaging her career prospects at Mercer, and diminished increases in compensation.

41. When Nixon-Jones continued to exercise her lawful rights by taking intermittent FMLA leave in the fall of 2022 and reverting to telework during an illness in early 2023, Mercer's retaliatory conduct increased, culminating in additional threats from Dean Sneddon in January and February 2023 that implied Nixon-Jones' job was in jeopardy.

42. During the course of her employment, in addition to the rejection of her request to continue teaching remotely when white faculty members were granted extended remote accommodations, Nixon-Jones also became aware that she was subjected to racially discriminatory treatment in the form of compensation that lagged behind at least one white assistant professor who joined the faculty at Mercer Law at the same time as Nixon-Jones but with less teaching and academic experience.

43. In the wake of her resignation, Nixon-Jones continued to suffer reprisals that diminished her professional standing, in that her office was reassigned, her work laptop was ordered to be returned, and she was denied a research stipend for the summer of 2023. Nixon-Jones' resignation did not become effective until the end of June 2023, and Mercer's customary practice is to permit departing faculty to receive the full privileges of employment until the end of their contract.

44. Subsequent to her exit from Mercer, a well-regarded top 100 law school according to the U.S. News & World Report 2023-24 rankings, Nixon-Jones had no choice but to accept appointment to the faculty of an unaccredited law school, a reduction in stature that affects her future opportunities for advancement.

## CAUSE OF ACTION
## COUNT I
**(Retaliatory hostile environment under the Americans with Disabilities Act, 42 U.S.C.A. § 12203(a))**

45. Plaintiff incorporates by reference paragraphs 1-44 of this complaint as though set forth fully and separately herein.

46. Defendant is a covered entity under the ADA. 42 U.S.C.A. § 12111.

47. Plaintiff engaged in protected activity in that she exercised her rights under the ADA to seek a reasonable accommodation for physical impairments resulting from long Covid.

48. Because of her protected activity, Plaintiff was subjected to ongoing retaliatory conduct, including but not limited to a denial of a reasonable accommodation; reductions in the scope of her job responsibilities; warnings and threats of termination.

49. The ongoing retaliatory conduct to which Plaintiff was subjected well might have dissuaded a reasonable employee from engaging in protected activity and therefore constituted a retaliatory hostile environment.

50. As a result of Defendant's retaliatory conduct, Plaintiff has suffered various damages, including economic losses based on the harm she has incurred to her future earning potential and compensatory damages related to mental anguish, emotional distress, and reputational stigma. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

## COUNT II

**(Disparate treatment based on race, in violation of 42 U.S.C.A. § 1981)**

51. Plaintiff incorporates by reference paragraphs 1-44 of this complaint as though set forth fully and separately herein.

52. Plaintiff is an African-American.

53. 42 U.S.C.A. § 1981 prohibits racial discrimination in "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." An at-will employment relationship is a contractual relationship within the meaning of § 1981.

54. Defendant subjected Plaintiff to racially discriminatory practices during her employment, including but not limited to paying her less than at least one white coworker who contemporaneously joined the faculty at Mercer Law but with less professional and academic experience than Plaintiff, and denying Plaintiff disability-based accommodations that were extended to white colleagues who sought similar accommodations.

55. Plaintiff's race was a but-for cause of her discriminatory treatment.

56. As a result of Defendant's racially discriminatory practices, Plaintiff suffered economic losses, including lost future wages, as well as compensatory damages related to emotional distress, mental anguish, and humiliation.

# COUNT III

## (Retaliation in violation of the Family and Medical Leave Act, 29 U.S.C.A. § 2615(a)(2))

57.     Plaintiff incorporates by reference the preceding paragraphs 1-44 of this complaint as though set forth fully and separately herein.

58.     Defendant is a covered entity under the FMLA. 29 U.S.C.A. § 2611(4)(A)(iii)-(B).

59.     Plaintiff was an eligible employee under the FMLA in that when she took leave under the FMLA, she had been employed by Defendant more than 12 months, or 1,250 hours, during the previous 12-month period. 29 U.S.C.A. § 2611(2)(A).

60.     Plaintiff engaged in statutorily protected conduct in that she exercised her right to take leave under the FMLA.

61.     Plaintiff was subjected to retaliatory conduct based on her exercise of her FMLA rights, including but not limited to remarks from senior level leadership that her absences from her job jeopardized her standing at Mercer Law School and subsequent threats to terminate her employment.

62.     Defendant's actions would have dissuaded a reasonable employee from exercising her rights to take FMLA leave.

63. As a result of Defendant's retaliatory conduct, which was the proximate cause of her resignation, Plaintiff suffered monetary damages including economic losses based on the harm she has incurred to her future earning potential. Based on the willful nature of Defendant's conduct, Plaintiff is entitled to liquidated damages.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory damages to the full extent allowed by law.

C. Punitive damages.

D. Attorneys' fees and costs of litigation.

E. Prejudgment and post-judgment interest at the highest lawful rate.

F. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted the 26th of February 2024.

        **HKM Employment Attorneys LLP**

        *s/Artur Davis*
        Artur Davis[1]
        ASB-3672-D56A
        2024 3rd Ave. North, Suite 212
        Birmingham, AL 35203
        Direct: 205-881-0935
        adavis@hkm.com

        *s/Jermaine "Jay" Walker*
        Jermaine "Jay" Walker
        GA Bar No. 142044
        3344 Peachtree Rd. NE, Suite 800
        Office No. #35
        Atlanta, GA 30326
        Direct: 404-301-4020
        jwalker@hkm.com

        **Attorneys for Plaintiff Latisha Nixon-Jones**

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.